WHITE. v. MORGAN & WRIGHT.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—CONCLUSION OF DEPARTMENT OF LABOR AND INDUSTRY FINAL IF SUPPORTED BY TESTIMONY.

On certiorari to review an award by the department of labor and industry, under the workmen's compensation act, if there is any testimony or legitimate inferences which may be drawn from the testimony sustaining the conclusion of the department, it is binding upon the Supreme Court,. even though a different conclusion might have been reached by it had it been trier of the facts.

2. SAME—STATUTE OF LIMITATIONS—RUNNING OF STATUTE.

Where plaintiff received what was at first thought to be a slight injury to his right forearm, but which later developed into a bone cancer or sarcoma, resulting in an operation which left the arm practically useless, the finding of the department that the statute (Act No. 64, Pub. Acts 1919), amending the workmen's compensation act, limiting the time for filing claim for compensation thereunder to three months after the injury developed, began to run from the date of the operation, held, justified by the record.

3. SAME—DATE OF MAKING CLAIM.

The finding of the department that plaintiff made claim for compensation within the statutory period, at· a time when he visited defendant's plant and related to the manager of its compensation department all that had happened to him, held, justified by the record.

Certiorari to Department of Labor and Industry. Submitted January 6, 1922. (Docket No. 59.) Decided March 30, 1922.

Arthur White presented his claim for compensation against Morgan & Wright for an accidental injury in defendant's employ. From an order awarding compensation, defendant brings certiorari. Affirmed.

For authorities discussing the question as to giving of notice of injury and filing claim for compensation under workmen's compensation acts, see notes in L. R. A. 1916A, 83, 244; L. R. A. 1917D, 135; L. R. A. 1918E, 556.

*E. Dean Alexander* and *Charles H. Ruttle,* for appellant.

*Millis, Streeter, Murphy & Berns* (*George B. Murphy,* of counsel), for appellee.

FELLOWS, C. J.   Plaintiff was in the employ of defendant from July, 1919, until June, 1920, in the mill and calender department at its Detroit plant.   On November 21st, he received a blow on the right forearm.   He was given first aid, iodine being applied, and a report of non-compensable accident was made to the industrial accident board, the claimed injury being stated as "sprained muscle of R. forearm."   It is the claim of the plaintiff that he had intermittent pains in his arm, that he consulted the company's doctor from time to time, that he suggested to the doctor that he have an x-ray made of the arm but he was dissuaded from so doing by the doctor as a useless expenditure of money.   He continued working every day except four or five days in May when he laid off.   In June he applied for a month's vacation to visit his old home at Herculaneum, Missouri.   He had been suffering from pain in his arm for some time before that.   He was granted a two weeks' vacation and went to Missouri.   He there consulted doctors and received treatment, hypodermically and otherwise administered.   He had an x-ray taken at a private sanitarium, and finally in July went to see Dr. Monroe, a surgeon in charge of a large hospital treating industrial cases at Bonne Terre.   Dr. Monroe had an x-ray made, took blood tests, and reached the conclusion that plaintiff had a bone cancer—sarcoma.   He, however, desired to be confirmed in his diagnosis before operating and sent plaintiff to a Dr. Hall, a specialist of high standing in x-ray work who was located at St. Louis.   Dr. Hall took an x-ray and

confirmed his diagnosis.   On August 2d, Dr. Monroe performed an operation on plaintiff's arm.   It is apparent from Dr. Monroe's testimony that he was at least hopeful of saving the usefulness of the arm.   He testified:

"We first removed about three inches of bone endeavoring to leave the head of the radius and a part of the lower staff.   We discovered, however, that we had sawed through diseased bone at the upper portion and were compelled to remove the entire head of the radius."

This operation removed the cancerous growth but it is claimed by the plaintiff that he can not use his right arm and that he is incapacitated from labor. On August 21st, he wrote defendant but the letter can not be treated as a claim for compensation.   On October 3d he visited defendant's plant at Detroit and had a talk with Mr. Brennan who was in charge of defendant's compensation department; it was carrying its own risk.   It is plaintiff's claim that at this conversation he made an unequivocal claim for compensation.   Later a formal claim was served and filed with the board.   The defense is that the claim for compensation was not seasonably made.   The department of labor and industry found among other things that the statute began to run on the date of the operation, August 2d, and that the claim for compensation was made on October 3d.   Defendant here assails both conclusions.

In passing on the provisions of sections 15 and 4 of part 2 of the original act (sections 5445 and 5434, 2 Comp. Laws 1915), this court in numerous cases (among them see *Cooke* v. *Furnace Co.,* 200 Mich. 192 [L. R. A. 1918E, 552]; *McMullen* v. *Construction Co.,* 200 Mich. 203; *Kalucki* v. *Foundry Co.,* 200 Mich. 604; *Dane* v. *Traction Co.,* 200 Mich. 612; *Schild* v. *Railroad Co.,* 200

Mich. 614) was constrained to hold that the statute commenced to run with the happening of the accident. In some of the cases we pointed out that if the statutory provisions worked hardships in particular cases the remedy was with the legislature. The legislature at its 1919 session amended the compensation act in several particulars (Act No. 64, Pub. Acts 1919), among the amendments being the addition of the following proviso to section 15:

"*Provided, however,* That in all cases in which the employer has been given notice of the injury, or has notice or knowledge of the same within three months after the happening thereof, but the actual injury, disability or incapacity does not develop or make itself apparent within six months after the happening of the accident, but does develop and make itself apparent at some date subsequent to six months after the happening of the same, claim for compensation may be made within three months after the actual injury, disability or incapacity develops or makes itself apparent to the injured employee, but no such claim shall be valid or effectual for any purpose unless made within two years from the date the accidental personal injury was sustained." * * *

Manifestly the purpose of this amendment was to afford relief from the rigor of the statutory limitation of six months in cases where the injury and disability did not develop until after the statutory period had expired. The amendment does not, and we can not, fix as an arbitrary hard and fast rule the date of the operation as the date at which the statute begins to run. Each case must be governed by its own facts. In the instant case the department of labor and industry reached the conclusion upon the facts that the actual injury, disability and incapacity did not develop or make itself apparent to the plaintiff until the operation was had. If there is any testimony or legitimate inferences which may be drawn from the testi-

mony sustaining this conclusion, it must be accepted by us even though we might reach a different conclusion if we were the triers of the facts.   Having in mind our duty and power we think it can not be said that the conclusion of the department of labor and industry is without foundation in the testimony. Plaintiff continued in the discharge of his duties to defendant up to and including the 11th day of June, more than six months after the accident.   That he faithfully discharged such duties is evidenced by the reluctance and final refusal of the employer to consent to a vacation for the time he wanted.   The defendant's doctor had evidently concluded that his injury was inconsequential as he had dissuaded plaintiff from having an x-ray made.   After plaintiff reached his old home at Herculaneum he had some treatment from a local physician; this included hypodermic injections. Not improving, he consulted a man skilled in industrial surgery.   But this doctor after making blood tests, having an x-ray made and carefully examining it and fully going over the history of the case, was not so sure of his diagnosis that he was willing to operate without having his diagnosis confirmed by a specialist of recognized standing in his profession. The injury was a hidden one; the operation revealed that it was more serious than the diagnosis had indicated.   Under all the circumstances here disclosed we can not say that the finding of the department has no support in the testimony or in the legitimate inferences to be drawn therefrom.

We have held that the claim for compensation must be unequivocal.   Based on that rule we conclude that plaintiff's letter of August 21st was not a sufficient claim.   Any doubt as to the propriety or force of an oral claim for compensation was set at rest by the amendment to section 15, part 2, by the act of 1919.   On October 3d plaintiff came to Detroit and

to defendant's plant. He there saw Mr. Brennan in charge of the compensation department. To him he fully related all that happened to him, his injury, and gave him a history of the case, and—

"Q. Did you make any demand at that time for compensation?

"A. Yes. I asked him what the company was willing to do for me in regard to compensation."

While on cross-examination plaintiff, who appears to have been a very fair witness, was not positive that he could state the exact words used, we think the testimony justifies the finding that a claim for compensation was then made. Defendant so regarded it, as four days after the conversation took place and after it had time to investigate the matter and consider plaintiff's claim, it wrote him a letter concluding with the following:

"We cannot therefore see where there is any liability on the part of this company due you under the Michigan compensation law."

In this view of the case it becomes unnecessary to consider other questions in the briefs which have received very careful consideration by counsel but which are not here necessary to decide.

The award will be affirmed.

WIEST, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.