[File No. 6067.]

OLE J. BJORSETH, Respondent, v. NORTH DAKOTA WORK-
MEN'S COMPENSATION BUREAU, Appellant.

(244 N. W. 515.)

Opinion filed September 30, 1932.   Rehearing denied October 19, 1932.

*James Morris,* Attorney General, and *Thomas J. Burke,* Assistant
Attorney General, for appellant.

624

*Charles A. Lyche,* for respondent.

BIRDZELL, J.  This is an appeal from a judgment entered in the district court awarding compensation to the plaintiff.  In the petition and complaint it is alleged that one A. T. Ofstehage was engaged in the

meat market business in the city of Hatton and in the buying, selling and shipping of livestock and was insured with the Workmen's Compensation Bureau pursuant to law; that on the 21st day of January, 1929, Ofstehage employed claimant (the plaintiff), a carpenter by trade, to nail cardboard paper on railroad cars to fit them for the shipment of livestock; that the claimant undertook and completed the work; that the day on which the work was done was extremely cold and while in the course of his employment and while unnoticed by him he froze the big toe on his left foot; that at the time he experienced no particular pain or injury and there was no indication that he had been injured or had a claim against the Workmen's Compensation Bureau and that he suffered no ill effects from such freezing until November 17, 1929, after cold weather had again set in; that on the latter date he consulted a physician and learned he was suffering from the effects of the freezing received the previous January. It is alleged that for a long period following November 17, 1929, he was unable to do any work and unable "to collect himself sufficiently to appreciate the situation with reference to a possible claim against the said North Dakota Workmen's Compensation Bureau on account of the premises aforesaid;" that on May 15, 1930, after having recovered sufficiently to do so, he presented his claim to the bureau, showing that the toe had sloughed off and that he was still suffering and unable to do any work; that thereafter on May 23, 1930, the bureau dismissed the claim on the sole ground that the same was not filed within the statutory period of one year. To this complaint the defendant demurred. The demurrer was overruled and thereafter an answer was filed admitting the formal allegation as to the legal character of the defendant and the allegation with respect to the dismissal of the claim but denying all other allegations. For a further answer the defendant alleged that the plaintiff had wholly failed and neglected to file a claim for compensation within one year after the date of the alleged injury, and that he had failed and neglected to file his claim within sixty days after the date of the alleged injury and has not shown any good and sufficient cause for such delay. Upon the hearing in the district court the following facts were developed:

A. T. Ofstehage operated a meat market at Hatton, North Dakota, in connection with which he did butchering and occasionally shipped

livestock. On the 21st day of January, 1929, which was a very cold day, Ofstehage had occasion to ship some livestock and he employed the plaintiff to nail paper on the cars to protect the stock from the cold. A few days later the plaintiff called at the office of a local physician, complaining of a severe pain in the toe, and a treatment was given which was followed by immediate improvement. The following fall, on or about the 17th of November, the plaintiff returned to the physician and an examination disclosed a "very bad" condition, the toe being swollen, blistered, and showing the beginning of gangrene. The doctor ordered him to bed and kept him there all winter. He described the condition as follows: "It kept up a slight sloughing, but no special demarcation, and I decided it was useless to try to amputate it, because the disease would probably go farther; but towards spring, why, the end of the toe sloughed off, that is, demarcation at the first joint, and I picked that off. After that the toe began to heal very rapidly." The doctor testified that the condition was caused by the freezing of the winter before; that it was brought about through subsequent exposure, less than freezing, setting up an inflammation which impeded the circulation.

The plaintiff had long worked at the carpenter trade. He had worked at different places during the year 1929, earning generally $1 an hour and averaging $10 a day for the days he worked. On one other occasion in the winter he had worked for Ofstehage nailing paper on cattle cars. On the occasion of his injury he worked only one day. For this work he received eighty cents an hour. He had no shop. He did odd jobs whenever he got a chance. He worked for Ofstehage in the winter of 1928 and 1929 on only two occasions preparing cars. For a number of years he had done considerable work for a contractor named Holcomb. He worked for him whenever he had a job and he worked for anyone having carpenter work to do about town. He had no serious trouble after he first consulted the doctor in January, 1929, until the 17th of November when the toe started to turn black. He filed his first claim with the bureau on the 15th of May, 1930. In the payroll report to the Workmen's Compensation Bureau covering the year in which the claimant's injury was received, the payroll was reported by Ofstehage for the meat market and for slaughtering, but there was no report of any payroll covering livestock shippers or

dealers. Each classification carries a different manual number and a different rate.

On this appeal the judgment of the district court is assailed upon four grounds. It is contended (1) that at the time of his injury the claimant was an independent contractor and not an employee as the term is defined in the North Dakota Workmen's Compensation Act; (2) assuming the plaintiff to have been an employee, he was a casual employee and not one employed in the course of the business or occupation of the employer; (3) assuming the plaintiff to have been an employee, he was not covered by the insurance effected by the employer; and (4) that in any event the Workmen's Compensation Bureau had no jurisdiction to make an award of compensation owing to the failure of the claimant to file his claim within the time prescribed by § 15 of the Workmen's Compensation Act. Clearly, if the last contention is well founded, the other contentions should not be considered; for if the bureau was without power or jurisdiction to make any award, it is immaterial whether or not the claimant was in other respects within the protection of the Compensation Act.

Section 15 of the Workmen's Compensation Act (chapter 162, Session Laws of 1919; § 396a15, 1925 Supplement to the Compiled Laws of 1913) reads:

"No compensation under this act shall be allowed to any person, except as provided in section eighteen unless he or someone on his behalf shall, within the time specified in this section make a written claim therefor. Such claim shall be made by delivering it at the office of the workmen's compensation bureau or to any person whom the bureau may by regulation designate or by depositing it in the mail properly stamped and addressed to the bureau or to any person whom the bureau may by regulation designate.

"Every claim shall be made on forms to be furnished by the bureau and shall contain all the information required by the bureau. Each claim shall be sworn to by the person entitled to compensation or by the person acting on his behalf, and, except in case of death, shall be accompanied by a certificate of the employee's physician stating the nature of the injury and the nature and probable extent of the disability. For any reasonable cause the bureau may waive the provisions of this section.

"All original claims for compensation for disability or death shall be made within sixty days after injury or death. For any reasonable cause shown the bureau may allow original claims for compensation for disability or death to be made at any time within one year."

Section 18, which gives the board a continuing power to review its previous action, expressly makes the exercise of the power to depend upon the making of an original claim within the time specified in § 15. While the language used with respect to the making of claims within sixty days is mandatory, it is apparent that this short limitation is not to be rigidly applied, for the bureau is authorized to receive and allow original claims made at any time within one year, where any reasonable cause is shown. This, of course, means where any reasonable cause is shown why the claim was not made within the sixty-day period. The limitation runs from the "injury or death." There can be no doubt that the authority of the bureau to award compensation is limited to claims made within one year from the date of injury or death. This is the language of the statute and we are bound to enforce the intention therein manifested. While counsel for the respondent argues that the statute, being remedial, requires a liberal construction, such a rule cannot be employed to the substantial advantage of a claimant with respect to a matter concerning which the legislative intention is clear. However, argument is advanced to the effect that where a positive injury is received for which some slight compensation or award may be made but yet where there is present potentially a much graver injury from which disability may later result without any intervening cause, a liberal application of the remedial provisions of the law requires that the injury, for purposes of the limitation, should date from the subsequent serious manifestation. We should be strongly inclined to adopt this view if it were possible to spell out such a legislative intention. The statute itself presupposes that the serious consequences of an injury may not become so manifest within sixty days thereafter as to cause the claimant to file a claim. This would undoubtedly be a "reasonable cause" for presenting the same at a later time. In the very provision authorizing the making of delayed claims, where a reasonable cause exists for the delay, the authority of the bureau to receive them is limited to one year from the injury or death. The legislature must be deemed to

have known that injuries will occasionally be received from which serious consequences may not result for a considerable period thereafter and in the light of that knowledge it nevertheless placed a limit of one year from the date of the injury—not the resulting serious manifestation—for the presentation of a claim. And it saw fit to wholly deprive the bureau of the power to make compensation out of the fund unless the claim were so made.

The obvious purpose of such a requirement is to enable the bureau to make an investigation while the circumstances out of which the injury is claimed to have arisen are reasonably fresh. This purpose would be largely defeated by dating the injury from the subsequent physical manifestations. However unfortunate a claimant may be who finds himself without the pale of the statute by reason of the limitation, his misfortune is only that which was within the reasonable contemplation of the legislature and such as must necessarily result in some cases from the fixing of any arbitrary limitation.

In support of the contention that the time for filing a claim begins to run at the time the injury develops rather than at the time of the accident when the injury was received, counsel cites cases from other jurisdictions. Principal reliance is placed upon Brown's Case, 228 Mass. 31, 116 N. E. 897; White v. Morgan & Wright, 217 Mich. 499, 187 N. W. 257; Clausen v. Minnesota Steel Co. 186 Minn. 80, 242 N. W. 397; Johansen v. Union Stock Yards Co. 99 Neb. 328, 156 N. W. 511; Selders v. Cornhusker Oil Co. 111 Neb. 300, 196 N. W. 316; Stolp v. Department of Labor & Industries, 138 Wash. 685, 245 Pac. 20. These cases all arose under statutes which differ materially from Section 396a15 of the Supplement above quoted. But of all the statutes construed perhaps that of Washington is most similar to ours and consequently the Washington case may be considered as the strongest authority in support of respondent's position. The statute construed in that case provided that no application should be valid or any claim thereunder enforceable "unless filed within one year after the date upon which the injury occurred or the right thereto accrued." In defining the term injury the court differentiated between injury and accident, holding the injury to be the result of the accident and that it did not occur, within the statute, until the serious manifestation which gave rise to a claim for disability. The writer of this opinion

is strongly impressed with the reasonableness of that construction of the term injury, but it must be conceded that such a construction of § 396a15 would defeat the evident purpose of the limitation which requires claims to be made within such time as would enable the bureau to advantageously determine the facts. Under such a construction there would be no limitation at all under our law as to any claim for serious disability resulting from a minor injury sustained more than a year prior to the making of the claim. Hence, while impressed with the reasonableness of the definition of the term injury as given in the Washington case (and some of the others) relied upon by the respondent, I am not prepared to disagree with the remaining members of this court in holding that under our statute the term may not be so defined as to destroy the effect of the statute as a limitation and thus to defeat an evident primary legislative intention. It will serve no good purpose to review the statutes of other states at length. Suffice to say here that all of them contain provisions more favorable to the claimant in the circumstances here disclosed than are found in our statute. In our opinion it is better for the legislature to make appropriate provision for such a case as is presented here than for the court to adopt a forced construction of the statute in order to support a seemingly just claim. See Cooke v. Holland Furnace Co. 200 Mich. 192, 166 N. W. 1013, L.R.A.1918E, 552, 17 N. C. C. A. 153; White v. Morgan & Wright, 217 Mich. 499, 187 N. W. 257, supra.

It follows that the judgment must be reversed. It is so ordered.

CHRISTIANSON, Ch. J., and NUESSLE, BURR and BURKE, JJ., concur.